UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD SEPULVEDA,<br><br>    Plaintiff,<br><br>    v.<br><br>OLE'S WAFFLE SHOP, et al.,<br><br>    Defendants. | Case No. 20-cv-00400-DMR<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 77 |

Plaintiff Richard Sepulveda is an individual with a disability. He filed a complaint against Defendants Ole's Waffle Shop, Douglas F. Durein, and Susan C. Durein alleging violations of the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act. Defendants now move pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss the amended complaint for lack of subject matter jurisdiction, arguing that Sepulveda's ADA claims are moot and that the court should decline to exercise jurisdiction over the Unruh Act claims. [Docket No. 77.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is granted.

**I.  BACKGROUND**

Sepulveda makes the following allegations in the operative complaint: Sepulveda "is limited in the use of his legs and must use a walker." [Docket No. 50 (First Am. Compl., "FAC") ¶ 8.] Ole's Waffle Shop ("Ole's") is a restaurant in Alameda, California. Douglas F. Durein and Susan C. Durein (the "Dureins") own the building in which Ole's operates. *Id*. at ¶ 3. Sepulveda visited Ole's on September 25, 2019, October 29, 2019, and December 7, 2019 and encountered numerous access barriers. *Id*. at ¶ 14. The barriers identified in the FAC are: 1) the entrance door lacked the proper posted accessibility symbol; 2) the interior seating "was not accessible to disabled users" because the tables lacked the required knee and toe clearance and clear floor space

and "the international symbol designating such table for disabled persons," and the counter seating and booths were inaccessible; 3) "[s]ome of the" interior aisles between tables "were too narrow and caused difficulty to move about," and "in order to access a portion of the dining area, it is necessary to pass through the kitchen area, which is not an accessible path"; 4) "[t]he restroom was not accessible for users of walkers" and "[t]he path of travel [to the restroom] was through the kitchen," which had too-narrow lateral clearances, and 5) the restroom itself contained numerous violations, including unwrapped pipes under the sink, toilet paper and paper dispensers in the wrong positions, a too-high mirror, a door handle that required twisting and grasping, and a flush handle "on the wrong side." *Id*. at ¶ 4(a)-(d). These barriers interfered with Sepulveda's access to Ole's. *Id*. at ¶ 5.

Sepulveda filed the original complaint on January 20, 2020 alleging the foregoing disability access violations. The parties conducted a joint site inspection at Ole's on August 19, 2020; at the time, dine-in service was not permitted due to the COVID-19 pandemic. [Docket Nos. 84-1 (Cortez Decl., Jan. 25, 2022) ¶ 2, Ex. 1; 77-3 (Corfee Decl., Jan. 14, 2022) ¶ 9.]

On February 18, 2021, Sepulveda asserts that he drove past Ole's and observed that it had placed tables and chairs on the public sidewalk outside the restaurant and in front of the business next door to Ole's that did not comply with disability access laws. [Docket No. 41-3 (Sepulveda Decl., Mar. 31, 2021) ¶¶ 2-3.] Sepulveda states that he "observed waiters going back and forth from Ole's Waffle Shop to this new area . . . serving customers." *Id*. at ¶ 3. On May 27, 2021, the court granted Sepulveda leave to amend the complaint to add allegations about the additional barriers he observed. [Docket No. 49.] Sepulveda timely filed the FAC, which reasserts the existence of the barriers he identified in his original complaint as described above, and adds that Ole's placed the tables and chairs on the public sidewalk outside the restaurant and "outside the storefront next door . . . to serve Ole's Waffle Shop's customers." He further alleges that the tables and chairs on the sidewalk do not have the required knee and toe clearance and clear floor space and that the seating area lacks the required clear turning space and that "[t]hese new barriers deter [Sepulveda] from visiting again." FAC ¶ 7.

After Defendants substituted new counsel in September 2021, Ole's retained a Certified

1  Access Specialist ("CASp"), Kelly Bray, who inspected Ole's on October 6 and 13, 2021.
2  [Docket Nos. 64, 77-7 (Bray Decl.) ¶ 4.] Bray prepared a CASp report and concluded that each
3  alleged access barrier complies with ADA standards and that no barriers exist. *Id*. at ¶¶ 4-9, Ex.
4  A. Defense counsel sent Bray's report to Sepulveda's counsel and invited him to return to Ole's
5  to verify that no barriers exist. Corfee Decl. ¶¶ 6, 7.
6  Importantly, Sepulveda concedes that no barriers remain at Ole's. [Docket No. 84 (Pl.'s
7  Opp'n) at 3, 10.]
8  Defendants now move to dismiss the FAC for lack of subject matter jurisdiction. They
9  argue that Sepulveda's ADA claims are moot because none of the alleged barriers exist and
10 therefore Sepulveda lacks standing to seek injunctive relief, which is the only available relief
11 under the ADA. Defendants also argue that the court should decline to exercise supplemental
12 jurisdiction over Sepulveda's Unruh Act claim.
13 Defendants supported their motion with declarations by Bray and Ole's manager Ken
14 Monize, as well as a declaration by defense counsel. They submitted additional declarations by
15 Monize and defense counsel and declarations by two other individuals with their reply. [Docket
16 Nos. 85-1, 85-3, 85-5, 85-6.] The court granted Sepulveda leave to file a response to the new
17 evidence submitted with Defendants' reply. [Docket No. 86.] Sepulveda timely filed a response.
18 [Docket No. 87.]

19 **II.    LEGAL STANDARD**
20 A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject
21 matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The challenging party may make a facial or
22 factual attack challenging subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.
23 2000). A facial challenge asserts that "the allegations contained in a complaint are insufficient on
24 their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039
25 (9th Cir. 2004). "The district court resolves a facial attack as it would a motion to dismiss under
26 Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences
27 in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter
28 to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

3

1    In contrast, a factual attack disputes "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," and "[t]he court need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack. *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003) (citing *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir. 1989)). When "the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits," the court must apply the summary judgment standard. *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987). The motion to dismiss must be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id*.

## III.   DISCUSSION

### A.   ADA Claim

"Title III of the ADA prohibits discrimination on the basis of disability in the 'full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation' with a nexus in interstate commerce." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 904 (9th Cir. 2011) (quoting 42 U.S.C. §§ 2000a(b), 12182(a)). Unlawful discrimination under the ADA occurs when features of a public accommodation deny equal access to disabled persons:

> It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

42 U.S.C. § 12182(b)(1)(A)(i). A plaintiff alleging ADA violations may seek injunctive relief and

attorneys' fees.  42 U.S.C. §§ 12188(a)(2), 12205.

Defendants bring a factual challenge to the court's subject matter jurisdiction, arguing that Sepulveda's ADA claims are moot because Ole's does not have access barriers.  Sepulveda concedes that barriers no longer exist but responds that his ADA claims are not moot due to the voluntary cessation doctrine.  Opp'n 3, 6-8.  He contends that Defendants presented their jurisdictional challenge as a summary judgment motion and argues that the court should deny the motion due to disputed issues, including "whether there were barriers in the first place that [he] encountered" and "whether an injunction is now needed . . . to order [Defendants] not to violate the law in the future."  *Id*. at 2-3.

Since the facts supporting Defendants' mootness argument are intertwined with the substantive merits of the case, the court must apply the Rule 56 summary judgment standard.  *See Whitaker v. Gundogdu, Inc.*, No. 21-cv-03132-JSC, 2021 WL 5937659, at *2 (N.D. Cal. Dec. 16, 2021) (applying Rule 56 standard to Rule 12(b)(1) motion to dismiss ADA claims as moot, citing *Rosales*, 824 F.2d at 803); *Johnson v. Opa Campbell LP*, No. 21-cv-01619-PJH, 2021 WL 3493712, at *3 (N.D. Cal. Aug. 9, 2021) (same).[1]  The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1274 (9th Cir. 1998) (quotation omitted).  While "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case . . . part or all of a case may become moot if (1) subsequent events have made it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id*. (cleaned up).  "Because a private plaintiff can sue only for injunctive relief (i.e., for removal of the barrier) under the ADA, a defendant's

---

[1] Sepulveda was on notice that the summary judgment standard applies to this motion.  Defendants submitted evidence with their Rule 12(b)(1) motion and discussed the Rule 56 standard.  *See* Mot. 5-6.  Sepulveda acknowledged that the motion was "being presented as a motion for summary judgment" and submitted evidence supporting purported material facts in dispute.  *See* Opp'n 2-5.

5

voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." *Oliver*, 654 F.3d at 905 (internal citation omitted). However, voluntary removal of access barriers moots an ADA claim only "where there is no 'sufficient likelihood that [the plaintiff] will again be wronged in a similar way,'" *Whitaker*, 2021 WL 5937659, at *2 (alteration in original) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

In ADA access cases, "courts have held that where structural modifications are made, then it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to occur in the future since structural modification[s] undo the offending conduct." *Zaldivar v. City of San Diego*, No. 15CV67-GPC(RBB), 2016 WL 5118534, at *10 (S.D. Cal. Sept. 21, 2016) (collecting cases). On the other hand, courts considering non-structural features have found that "'voluntary remediation of' these violations do 'not moot an issue' because the violations 'could easily reoccur.'" *Moore v. Saniefar*, No. 1:14-CV-01067-SKO, 2017 WL 1179407, at *6 (E.D. Cal. Mar. 29, 2017) (quoting *Zaldivar*, 2016 WL 5118534, at *10). Nonetheless, "[e]ven with non-structural barriers, . . . if the evidence is undisputed that the ADA violations could not reasonably be expected to recur, the ADA claim will still be moot." *Whitaker*, 2021 WL 5937659, at *3 (collecting cases). In evaluating whether ADA violations "could not reasonably be expected to recur," courts consider "the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *Opa Campbell*, 2021 WL 3493712, at *3 (quoting *Watanabe v. Home Depot USA, Inc.*, No. CV025088RGKMCX, 2003 WL 24272650, at *4 (C.D. Cal. July 14, 2003) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953))). "The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *W. T. Grant Co.*, 345 U.S. at 633.

Here, the parties agree that no barriers currently exist at Ole's. However, they dispute whether the barriers alleged in the FAC were ever present. Prior existence bears on the issue of mootness. If the barriers previously existed, the court must determine whether they could reasonably be expected to recur. For this reason, the court must first determine whether Sepulveda has presented sufficient evidence from which a juror could find that barriers once existed at Ole's.

6

Monize states that "Ole's has had a fully compliant ADA restroom since 2001," but that there was an issue with the signage related to the accessible restroom that he fixed immediately after being served with the summons and complaint. Monize Decl. ¶¶ 8, 9; Monize Decl. II ¶¶ 1, 2.[2]  Defendants also cite CASp Bray's declaration, in which he states that he reviewed the operative complaint in connection with his October 2021 inspection of Ole's and "found that there is no further ADA action required and the alleged elements [of the violations] are not truthful and do not exist." Bray Decl. ¶ 4. As to the allegations added in the FAC regarding outdoor seating barriers, Defendants deny that Ole's served its customers at the tables on the sidewalk in February 2021, asserting that "[t]hose tables were owned and controlled by the business next door and they needed more space on the public sidewalk to serve their customers so they placed them in front of Ole's" and that "Ole's was not providing any outdoor dining services in the front of the restaurant [in February 2021] and has not at any other time." [Docket Nos. 77-5 (Monize Decl., Jan. 14, 2022) ¶¶ 5, 6; 85-3 (Monize Decl. II, Feb. 3, 2022) ¶¶ 12-14.]

In response to Defendant's evidence, Sepulveda submitted a declaration by CASp Roberto Cortez along with the written report prepared by Cortez following the August 19, 2020 joint site inspection. Cortez's report details violations related to 1) the men's restroom that Sepulveda contends he used during a prior visit; 2) the narrowness of the hallway leading to the men's restroom, and 3) the inaccessible dining counter. Cortez Decl. ¶ 2, Ex. 1 (Report at ECF pp. 9, 12-13, 14-20). Cortez also inspected the former women's restroom, which was converted into an "all gender single occupancy restroom." The only access violations he found in the all-gender restroom were 1) the existence of some "exposed" drain pipes under the sink that were not "insulated or otherwise configured so as to protect against contact" and 2) a sign identifying the accessible restroom that did not comply with technical requirements. Report at ECF pp. 8, 21, 23. Cortez concluded that the dining counter, accessible restroom sign, and uncovered pipes could be remedied at "no cost/low cost." Report at ECF pp. 8, 9, 29.

---

[2] Apparently there was only a "women's" sign on the accessible restroom. There is now a unisex sign on that restroom, which means that accessible bathroom facilities are available for all patrons. Monize Decl. ¶ 8.

7

Cortez's declaration addresses barriers with respect to the lunch counter and the sidewalk dining area. With respect to the lunch counter, Cortez states that at the August 2020 joint site inspection he "specifically found that the dining counter was not compliant" and that in March 2021, he walked by Ole's and observed the same non-compliant dining counter. Cortez Decl. ¶¶ 2-4. In January 2022, he observed a "remodeled lunch counter section" in the restaurant that had not been present during his March 2021 visit. *Id*. at ¶ 6.

With respect to outside dining facilities, Cortez states that during his March 2021 visit, he found a new barrier: "[t]he business has set out tables and chairs for dining outside in front of Ole's Waffle Shop on the public sidewalk," and the tables and chairs do not comply with disability access laws. Cortez Decl. ¶¶ 2-5. Sepulveda also points to a prior declaration in which he stated that he "saw waiters coming out of the door of Ole's delivering food to" the tables on the sidewalk in front of Ole's and the neighboring business, Wine and Waffles. [Docket No. 84-3 (Sepulveda Decl. II, Jan. 25, 2022) ¶ 2; Sepulveda Decl. 3.]

Viewing all of the evidence in the light most favorable to Sepulveda and drawing all inferences in his favor, Sepulveda has established a dispute of fact as to the prior existence of the following barriers at Ole's: structural barriers in the men's bathroom, a narrow hallway leading to the men's bathroom, exposed pipes in the accessible all-gender bathroom (previously labeled as the women's bathroom), a technically deficient sign identifying the accessible bathroom, an inaccessible lunch counter, and an outside dining area with insufficient knee, toe and clear floor space.[3]

As noted, the parties agree that Ole's presently has no access barriers. To determine whether the ADA claim is moot, the court must analyze Sepulveda's argument that the claim is not moot under the voluntary cessation doctrine. Viewing the evidence in the light most favorable to Sepulveda, the court assumes that the prior barriers identified above existed at one time. The key issue under the voluntary cessation doctrine is whether any of them are reasonably likely to

---

[3] By failing to submit evidence of their existence, Sepulveda has conceded on all other barriers alleged in the FAC. These include insufficient signage on the entrance door, barriers regarding indoor dining tables and booths, and narrowness of aisles between tables.

recur.

Sepulveda concedes that Ole's made structural modifications to the dining counter and accessible restroom signage; these barriers are unlikely to recur. With respect to the access violations in the men's restroom and the narrow hallway leading to that restroom, these problems were remedied by converting the accessible restroom formerly labeled for women into a unisex restroom. *See* Cortez Report at ECF p. 29. As a result, male patrons do not have to travel down a narrow hallway to reach a restroom, nor are they confined to using a restroom with access barriers. This amounts to a structural change that is not likely to recur.

Neither side addresses the unwrapped pipes that were in the accessible restroom. Nothing in the record supports a concern that this barrier will reemerge. Accordingly, the modification to the pipes—i.e., wrapping them up—is akin to a structural modification that is unlikely to recur.

With respect to the outside dining area, the court finds that the alleged violations (if they existed) are likely to recur. Ole's retained a CASp to inspect the restaurant and contracted with him to return every year for four years "to perform disabled access inspections . . . to ensure that the existing ADA features and being maintained" and to identify any new access issues. Monize Decl. ¶ 16, Ex. C (contract between Ole's and Bray); Bray Decl. ¶ 10. The next inspection is scheduled for October 2022. Bray Decl. ¶ 10.

Monize, who has managed and operated Ole's for the past 12 years, states that Ole's "never had a disabled access concern or complaint" until this case and that he "would be willing to fix anything for the disabled, and Ole's has always had this policy, practice, procedure and care towards the disabled." Monize Decl. ¶¶ 11, 14. Monize explains that Ole's has implemented a written ADA policy "regarding disabled access and to maintain the existing ADA features" that the restaurant has. *Id*. at ¶ 14, Ex. B. He met with Ole's employees to review the policy when it was implemented and employees signed acknowledgments that they had read, understood, and received a copy of the policy. Monize Decl. ¶ 14; Monize Decl. II ¶ 9, Ex. A (signed acknowledgments). Monize states that under the policy, "any concerns or questions about ADA disabled access must be immediately reported to the owners and management," and the policy contains a complaint sheet for that purpose. Monize Decl. ¶ 15. New employees are trained on

9

the policy by Monize. *Id*. Monize also states that he "fully intend[s] to maintain and keep Ole's ADA compliant in all respects" under state and federal law. Monize Decl. II ¶ 7.

This evidence demonstrates that Ole's "took affirmative steps to become compliant and prevent future violations," *see Opa Campbell*, 2021 WL 3493712, at *4, including by retaining a CASp for several years, remediating barriers to bring the restaurant into compliance, and implementing a written ADA access policy that is communicated to all employees. Additionally, there is no evidence that Ole's was aware of the alleged barriers prior to Sepulveda filing suit. In fact, Monize states that Sepulveda has been a patron of Ole's for at least 10 years and that he never informed Monize or any other Ole's employees that he had difficulty with access at Ole's. Monize Decl. ¶ 4.

In response, Sepulveda attempts to cast doubt on whether Defendants genuinely "intend to follow the law on disabled access in their future." Opp'n 10. He notes that Douglas F. Durein has admitted that "[a]pproximately 20-25 years ago, there was an ADA complaint about the building" that houses Ole's. According to Sepulveda, this shows that the Dureins "were on notice about the access laws." Sepulveda also presents evidence that Ole's performed work on its accessible restroom in 2002. *Id*. at 8 (citing Docket No. 14-2, D. Durein Decl., June 17, 2020, ¶ 4); Cortez Decl. ¶ 7 (describing evidence that Ole's "did ADA remedial work in the restroom" in 2002). Sepulveda notes that Monize admits that there was an issue with the signage on the accessible restroom that he became aware of only after receiving the summons and complaint and suggests that this shows that Monize was not actually paying attention to disability access issues. Opp'n 9. To the contrary, this evidence tends to show that Defendants have taken prompt action over the years when they have learned of access problems.

Finally, Sepulveda argues that Defendants' lawyers have displayed animus towards him throughout this litigation, including calling him a "vexatious litigant." Nothing in the record suggests that defense counsel's purported animus towards Sepulveda is attributable to their clients, or that the animus somehow incentivizes Defendants to allow Ole's to lapse into non-compliance. Sepulveda also contends that Ole's created new barriers (the allegedly non-compliant sidewalk dining area) during the course of this litigation that it removed only after Sepulveda amended the

10

complaint. Opp'n 8-9. As described above, the parties hotly dispute whether the sidewalk dining area was for Ole's patrons or for the patrons of the adjacent business. In any event, the evidence is undisputed that Defendants are aware of their accessibility obligations and are clearly on notice that any outdoor dining area must be accessible to disabled patrons. Robust enforcement of the ADA by private litigants like Sepulveda provides additional ample incentive to Ole's to maintain compliance with the disability access laws.

Based on this evidentiary record, "any conclusion that defendants would take action to [resume non-compliant outdoor dining] or otherwise . . . fall into ADA noncompliance would be pure speculation." *See Opa Campbell*, 2021 WL 3493712, at *4 (concluding that ADA violations were not likely to recur based on the defendants' affirmative steps to become compliant and prevent future violations, including hiring a CASp and installing accessible dining tables, as well as a lack of evidence of a history of violations, any intent by the defendants to violate the ADA again, and lack of the defendants' awareness of violations prior to the filing of the lawsuit); *Whitaker*, 2021 WL 5937659, at *3 (finding that the alleged violation was not likely to recur based on the defendant's prompt remediation of the barrier, attestation that it will maintain an accessible dining table as long as it is able to do so, long-standing commitment to provide accessible dining, and the plaintiff's failure to offer contrary evidence). Ultimately, the court must determine whether "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *W. T. Grant Co.*, 345 U.S. at 633. In this case, the evidence demonstrates nothing more than a "mere possibility" of recurrence. Accordingly, injunctive relief is inappropriate and the ADA claims are dismissed as moot.

### B. Unruh Act Claim

The Unruh Act provides that "[a] violation of the right of any individual under the [ADA] shall also constitute a violation of" the Unruh Act. Cal. Civ. Code § 51(f). It authorizes statutory damages of "no less than four thousand dollars ($4,000)" for each occasion on which a plaintiff was denied equal access. Cal. Civ. Code § 52(a).

Having dismissed Sepulveda's ADA claims as moot, his Unruh Act claims remain live "[b]ecause a claim for damages under the Unruh Act looks to past harm." *Arroyo v. Aldabashi*,

No. 16-CV-06181-JCS, 2018 WL 4961637, at *5 (N.D. Cal. Oct. 15, 2018). The court declines to exercise supplemental jurisdiction over his Unruh Act claims. *See Arroyo v. Rosas*, 19 F.4th 1202, 1213 (9th Cir. 2021) (explaining that "retention of supplemental jurisdiction over ADA-based Unruh Act claims threatens to substantially thwart California's carefully crafted reforms in this area"); *see also Johnson v. JKLM Props., LLC*, No. 20-cv-1078-EJD, 2020 WL 5517234, at *7 (N.D. Cal. Sept. 14, 2020) (declining supplemental jurisdiction over state law claims after dismissing ADA claim).

## IV. CONCLUSION

For the foregoing reasons, the court grants Defendants' motion to dismiss the FAC. Sepulveda's ADA claims are dismissed as moot and the Unruh Act claims are dismissed without prejudice to refiling in state court. The Clerk shall close the case.

**IT IS SO ORDERED.**

Dated: April 18, 2022



Donna M. Ryu
United States Magistrate Judge